Luis G. LLoréns Delgado, Plaintiff and Appellant, *v.* The Administrative Board of The Municipal Pier of Ponce, Defendant and Appellee.

No. 8874. Argued May 5, 1944.—Decided July 10, 1944.

R. *Hernández Matos* for appellant. *Erasto Arjona Siaca* por appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

The fundamental question to be decided in this appeal is whether the Administrative Board of the Municipal Pier of Ponce (hereinafter called "the Board") has the power to execute an employment contract for four years without the approval by the Municipal Assembly of Ponce of the salary agreed on in said contract.

The Board was created by a franchise granted on November 20, 1911, to the Municipality of Ponce by the old Executive Council, entitled "An ordinance granting to the Municipality of Ponce, Porto Rico, authority to construct, maintain and operate a pier, on the shore of Ponce harbor, at Peñoncillo Point."[1]

---

[1] Section 9 of said franchise, which is the one primarily involved in this appeal, reads as follow:

"Section 9.—That the pier to be constructed and operated by virtue of this ordinance shall be managed by a board, whose management, qualifications and tenure of office shall be as hereinafter set forth. Said board shall be known as the Board of Management and *shall have complete control of the management, operation and conservation of the pier structure, and so far as not incompatible with the terms of this ordinance,* or with the terms of any mortgage or bonded indebtedness to which the pier structure may be subjected, *shall have powers and duties similar to a board of directors in an ordinary commercial corporation,* but shall have no right to sell, lease or mortgage said pier without the consent of the Municipal Council, *and shall have no right to grant any special rights or privileges to any one.*

"*Said board shall have the right to employ such personnel, as in its judgment may be necessary properly to operate said pier and wharf, and to fix and determine the compensation of all employees, as well as the total estimated receipts and expenses for administrative purposes, and this total amount shall be submitted for the approval of the Municipal Council; and in the event that the budget is not so approved by the Municipal Council, it shall be submitted to the Executive Council for decision and adjustment, the action of which shall be final.*

" * * * * * * *

904

On January 3, 1941, the Board consisted of the following members: Eugenio Le Compte, Arturo Castro, Jr., Teodoro Moscoso, Rafael Angel Torres, and Guillermo Cortada. On that date the Board and the plaintiff, Luis G. Lloréns Delgado, who for several months had been holding the position of Superintendent of the Pier, entered into a contract, embodied in a public instrument, by which Lloréns bound himself to hold the same position as Superintendent for a period of four years, to expire January 3, 1944, for a compensation of

"The Harbor fees, etc., and warehouse fees, and all other receipts accruing on account of said pier, wharf and warehouse, as fixed by the board of management and approved by the Executive Council, shall be collected by the board of management or its assistants, employees, etc. *and turned over to the municipal treasurer every day. The salaries of the personnel and running expenses of said pier, wharf and warehouse, shall be paid by the municipal treasurer upon vouchers signed by the manager and countersigned by the secretary of the board of management, with the right of the board of management to intervene at any time.*

"*The net receipts from the operation of the wharf, pier and warehouse, after paying salaries and operating expenses,* shall be set aside by the board of management *and the municipal treasurer to pay the annual interest and establish the annual proportion of the sinking fund of the municipal loan affected from the People of Porto Rico,* for the purpose of building and constructing this improvement, and *after* such applications *to pay interest* and establish the sinking fund *then the board of management, with the approval of the municipal council,* may apply such portion of the balance remaining as may be necessary for the repair and unkeep of the pier and appurtenances thereto, and to removing any obstacles to the free use of the pier. After such application has been made, *the remainder shall be placed at the free disposal of the municipal council and shall be lawfully applied and expended in such other city improvements as may be deemed necessary.*

"The board of management hereinbefore provided for shall consist of five members to be appointed by the Governor with the advice and consent of the Executive Council, *two of whom shall be members of the Municipal Council,* and the other three representative business men resident within the Municipal District of Ponce, *one of whom shall be selected by the Governor from a list of nine men recommended by the Municipal Council.* The two members appointed from the Municipal Council shall hold office for four years, and the other three members for two years. Said board of management, one or all, may be removed at any time by the Governor being final. In case of death, disability, resignation or removal before the expiration of a term of office a substitute shall be appointed by the Governor, as above provided, to complete the unexpired portion of said term of office." (Italics ours.)

$100 every two weeks.[2] On June 30, 1941, the terms of office for which Le Compte, Castro, Jr., and Moscoso, has been appointed had expired and the Governor of Puerto Rico, in accordance with the provisions of the franchise, had made appointments of Juan Cabrer, Juan Ruiz Mora (members of the Municipal Assembly of Ponce) and Ismaro Torruella, a merchant, upon recommendation of said Assembly, The Board, thus reorganized, agreed on June 30, 1941, to declare vacant the position of Superintendent of said pier, and removed the plaintiff, effective the first day of July, 1941.[3] Lloréns rendered services as Superintendent, receiving every fifteen days the amount of $100 until he was removed from his position on June 30, 1941, and he later sued the Board claiming $8,400 in damages for breach of contract. Nothing in evidence shows that the Municipal Assembly of Ponce had knowledge of the contract entered into between the Board

---

[2] Among the services assigned to Mr. Lloréns by the first clause of the contract, are the following:

"Mr. Luis G. Lloréns Delgado by these presents engages and binds himself to render his personal services as Superintendent of the Municipal Pier in Ponce, taking charge of the immediate direction of the loading and unloading in said municipal pier of Ponce, the conservation of the structure of the pier and all its implements, *the appointment and payment of employees for the loading and unloading of ships, and all other duties necessary for the better management of the business to which the Municipal Pier of Ponce is dedicated.*" (Italics ours.)

[3] The agreement of the Board did not refer to the position of Superintendent, exclusively, but also included thirteen additional positions, and in its pertinent part, reads as follow:

"That for the purpose of carrying on a total reorganization of the business of the pier, be it decided by this Administrative Board of the Municipal Pier of Ponce, to declare vacant today the following positions and that this agreement be made public for the knowledge of all interested persons:

| | |
|---|---|
| 1. Superintendent | 8. Loading Inspector |
| 2. Cashier | 9. Practitioner |
| 4. Accountant | 10. Mechanic |
| 3. Vice Manager | 11. Doorman |
| 5. Timekeeper | 12. Two watchmen |
| 6. Warehouse keeper | 13. Two assistant sweepers |
| 7. First Watchman | 14. A day watchman |

"After Mr. Ruiz Mora's motion, it was approved by three votes for it and one against it, that of Mr. Cortada."

and Lloréns and neither is there any proof which shows that the Board submitted for approval to the Municipal Assembly a budget for the salary given to Lloréns for fours years. The pier's budget for the fiscal year 1940–41 was sent for approval to the Municipal Assembly on July 12, 1940—about six months before the execution of the contract between the Board and Lloréns on January 3, 1941—and there is no evidence that the same was approved by the Assembly. In said budget the item for the payment of "Personnel of the Pier," is approved in the amount of $13,500 without any specification of salaries. The pier's budget for the fiscal year 1941–42 was submitted by the Board to the Municipal Assembly on June 25, 1941, and approved by the Assembly the next day to become effective on July 1st, and the "personnel of the pier" is therein itemized, starting with a "Chief of the Pier or Works Inspector," with a monthly salary of $195.

The court below dismissed the complaint and the appellant urges that it erred, 1, in deciding that the Board is subordinated to the Municipality of Ponce and therefore subject to the result of the general elections; 2, in deciding that the Board that executed the contract was a different entity from the one that breached it and that was not bound by it; 3, in deciding that the contract was never perfected because it was not approved by the Municipal Assembly; 4, in deciding that the contract deprived the succeeding Board of its powers to change the personnel of the pier; and 5, in deciding that the contract conflicts with the franchise, public policy and a sound public administration.

We shall not follow the lengthy discussion made by appellant in his brief as to each error assigned. We have already said that the fundamental question herein involved is: if the Board had the power to execute a four-year contract without approval by the Municipal Assembly of the salary granted to the appellant. We are immediately faced

with the scope of §9 of the franchise, *supra,* as regards the limitations that it imposes on the Board.

A careful study of said Section shows that although full and general powers were granted to it "to manage, operate and conserve" the Pier of Ponce, said "powers and duties" shall be similar to those "of a board of directors in an ordinary commercial corporation" and it is specified that it "shall have no right to grant any special right or privileges to any one." It is immediately stated that the Board shall have the right to "employ such personnel, as in its judgment may be necessary, properly to operate said pier and wharf, and to fix and determine the compensation of all employees, as well as the total estimated receipts and expenses for administrative purposes." But this "total amount," that is to say, the compensation of all the employees plus the estimate of receipts and expenses, *"shall be submitted for the approval of the Municipal Council and in the event that the budget is not so approved by the Municipal Council"* it shall be submitted to the Executive Council for decision and adjustment, the action of which shall be final. (Italics ours.) It is further provided that the "salaries of the personnel. . . shall be paid by the Municipal Treasurer" and that all the net receipts from the operation of the wharf shall be "turned over (by the Board) to the Municipal Treasurer every day." Lastly said Section provides the form in which the net receipts of the wharf shall be placed after payment of the salaries and operation expenses with the intervention of the Municipal Treasurer and the Municipal Assembly and if there be any "remainder [it] shall be placed at the free disposal of the Municipal Council and shall be lawfully applied and expended in such other city improvement as may be deemed necessary."

Can it be held, as appellant contends, that under this provision the Board is an organism completely autonomous and independent of the Municipal Assembly? If after taking into

account the above-stated limitation, we also take into account the manner in which two of its members are appointed—municipal assemblymen and another member upon recommendation of the Municipal Assembly—the question must be answered in the negative. The intention of the Executive Council in granting this special franchise to the Municipality of Ponce was to create a Board to manage, under the supervision of the Municipal Assembly, as regards the approval of every salary paid and expenses, the pier to be constructed. It is true that the Board has complete control of the management of the wharf (it is a municipal dependency) and for that purpose it can select, appoint, and determine the salaries of its employees. But all of this is subject to a very important limitation: that said salaries must be submitted in an annual budget for the approval of the Municipal Assembly. The evidence discloses that in the instant case this was never done. In the one corresponding to the fiscal year 1940–41 it could not be done because at the date in which the budget was submitted by the Board to the Assembly no contract existed with the appellant and in that corresponding to the year 1941–41 it could not be done because by then the Board thus reorganized, had eliminated the position.

It is presumed that the appellant in contracting with the Board knew of its limited authority to execute the contract since the franchise creating the Board was impliedly a part of the contract. Hence, we are of the opinion that the court below did not err in deciding that the Board did not have the power to execute a contract for four years. Furthermore, the franchise itself, in granting to the Board full power to manage the pier, impliedly prohibits it from delegating such powers to other persons, in the manner in which it was attempted to do in contracting with the appellant, to whom the power to make appointments of employees and to pay their salaries was granted, and which is the exclusive

power of the Board. As a matter of fact, what was attempted to be done here was to tie the Board's hands for four years.

 The appellant by his brief tries to show that the action of the Board was inspired by political motivations and argues that in the management of the Ponce Pier political motivations should not prevail and ought not to be protected by the courts. Appellant's position does not have much persuasive force. We take judicial notice that in November, 1940, general elections were held in Puerto Rico and that as a consequence of the same, a total change in the municipal administration of Ponce took place. This being the situation, appellant, who worked in the Ponce Pier without any contract, was offered by the outgoing Board and he accepted a four-year contract—until January 1945—knowing that this change had occurred in the administration of the Municipality of Ponce, which necessarily, by virtue of the franchise itself, had to occasion a change in the majority of the members of the Board. A mere statement of the facts suffices to answer the alleged contention of political machinations advanced by the appellant.

██ It is true that the Board is a continuing body and that the substitution of some of its members by others does not have the effect of rendering the Board, as such, a different one. This does not mean, however, that those who are members of the Board on a certain date can continue through their actions controlling the management of the Ponce Pier in such a manner that they will render ineffective for four years the powers conferred on the Board by the franchise. The contract executed with the appellant in January, 1941, has this effect and the court below did not erred in holding that it is against "the franchise, public policy and sound administration, since the Board is an organization created for a public purpose."

This conclusion is fully supported by the great weight

of the jurisprudence.[4] We do not deem it necessary for the decision of this case to consider and decide the scope of the governmental power or the proprietary power that could be involved in the action of the Board in the execution of the contract. We limit our opinion to the specific facts that, 1, the Board could not contract with appellant for four years because the salary fixed by the contract required the annual approval of the Municipal Assembly and said salary was never approved; and 2, the Board of January 1941, could not deprive the Board of the succeeding four years of the powers granted to it by the franchise to manage the pier.

The judgment appealed from is hereby affirmed.

---

[4] See annotation in 70 A.L.R. 794, especially at pp. 799 to 802.